APOSTOLICAS PROPERTIES CORPORATION & others[1] vs.
NANETTE S. RICHMAN.

No. 89-P-1131.

Norfolk. February 16, 1990. - June 6, 1990.

Present: DREBEN, CUTTER, & SMITH, JJ.

*Res Judicata. Judgment*, Preclusive effect. *Divorce and Separation*, Judgment, Findings. *Real Property*, Sale. *Practice, Civil*, Summary judgment.

In a civil action in which the plaintiffs sought a declaration that the defendant was precluded from claiming title to certain real property by reason of the final judgment in the defendant's previous divorce proceeding, summary judgment was inappropriate where the plaintiffs had not sustained their burden of proving that there were no genuine issues of material fact. [674-675]

The judgment in a divorce proceeding that allocated marital assets did not, in the circumstances, preclude the wife from claiming, in a later action against her by third parties, that she had an interest in certain real property owned jointly with her husband during the marriage that the husband had transferred without her knowledge or consent. [675-676]

Discussion of the issues of claim and issue preclusion arising in the context of a civil action and a divorce proceeding between the same parties, as considered in *Heacock* v. *Heacock*, 402 Mass. 21 (1988). [676-679]

In a civil action, the judge properly denied a motion to require his recusal, and where the action was remanded after appeal, the judge, in his discretion, could appropriately continue to preside over the proceedings. [679]

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on December 14, 1988.

The case was heard by *Edward M. Ginsburg*, J., on a motion for summary judgment.

*Jacob M. Atwood* for the defendant.
*Bruce F. Smith* for the plaintiffs.

---

[1]Bank of New Hampshire, N.A., and Nicholas P. Demis, Jr.

CUTTER, J. This case is closely related to the divorce proceeding decided today, *Richman* v. *Richman, ante* 655 (the divorce case).[2] It has been considered with that case by the same panel of this court.

In the divorce case the probate judge presiding at trial dealt with lists of the assets of Herbert J. Richman (the husband), and of Nanette S. Richman (the wife) which showed no land or other property of either the husband or the wife in Hollis, New Hampshire. The judge (also the presiding judge in the present case) in his findings and rulings in the divorce case refers to a circumstance, brought out in evidence received in the divorce case (also reproduced in the record in this case) where the husband admitted having told his secretary to sign the wife's name to a deed (and probably other documents, and obtain subsequent apparent notarial authentication of the signature) relating to the sale to Nicholas P. Demis, Jr., of land in Hollis (hereafter the locus). In the latter part of 1985, such land stood in the joint names of the husband and wife. It does not seem to be contested that the wife herself did not sign or acknowledge the disputed deed, which was recorded about December 23, 1985.

The findings and rulings of the presiding judge in the divorce trial and the judgment nisi each were dated March 4, 1988. On July 20, 1988, the wife commenced, in the Superior Court in New Hampshire, an equity suit seeking to "quiet title" to the locus parcels, which in 1985 had been conveyed by the husband to Demis. Demis conveyed the locus by a deed recorded in March, 1988, to Apostolicas Properties Corporation (Apostolicas). Apostolicas, Bank of New Hampshire, N.A., and Demis (hereafter collectively referred to as the transferees) now assert (in this case) either title to the locus or security interests in it.

On December 14, 1988, the present complaint was filed in the Probate Court by the transferees of the locus against the wife reciting essentially the circumstances already summa-

---

[2]The findings of fact and conclusions of law and certain other portions of the record in the divorce case were placed in the record in this case by an affidavit of counsel of record for the plaintiffs in the present case.

rized and seeking principally declaratory relief.[3] The present complaint (par. 12) also avers that, despite the wife's assertions of forgery, "she ratified the sale [to Demis] by continuing to reside" with the husband at property in Dover, Massachusetts; that the presiding judge in the divorce trial considered the circumstances relating to the locus in connection with his distribution of marital assets of the Richmans pursuant to G. L. c. 208, § 34; and that the issues raised by the wife's suit in New Hampshire had been "previously litigated" in the divorce case, so that the wife "is collaterally estopped from raising these same issues" in the New Hampshire proceeding. The transferees sought declaratory relief, in effect that the "[f]inal [j]udgment" of the judge in the divorce case was dispositive of "any alleged title interest" in the locus.

By separate motions the wife sought to stay this present proceeding until after decision by this court of the appeals in the divorce case and to have the presiding judge in the divorce case and in this case ordered to recuse himself. Both motions were denied by the trial judge on April 19, 1989, after hearing.[4]

On May 25, 1989, the transferees as a group filed a motion for summary judgment in the present case. To obtain this judgment the transferees relied essentially upon documents and evidence from the divorce case introduced in the present case by the affidavit of the transferees' counsel referred to in note 2, *supra*. The wife (in opposition to the transferees' motion) submitted an affidavit dated June 12,

---

[3]The complaint also alleges that the consideration paid by Demis for the 1985 conveyance recorded about December 23, 1985, was $856,000 and also that the "proceeds of the sale were an asset of the marital estate" in the divorce case; that the proceeds of the transfer to Apostolicas, the principal transferee, was $1,400,000, and that the mortgage interest of the Bank of New Hampshire was $1,800,000. The precise area of Hollis land held in joint ownership probably is not established on the present record. It may also be unresolved whether the whole consideration paid to the husband by Demis was related only to land held in joint ownership.

[4]The wife then sought in this court review by a single justice of the probate judge's denial of the motions to stay and for a required recusal of the probate judge. This review the single justice denied on April 26, 1989.

1989, stating (among other matters) essentially that no evidence was presented in the divorce case trial covering a possible continuing interest of the wife in the locus. A copy of an affidavit by Demis and his wife introduced in the New Hampshire equity suit, sworn to on March 21, 1989, also was submitted, showing that the wife (Mrs. Richman) had known of the sale of the locus to Demis and his wife and had sent flowers to Mrs. Demis in September, 1986, when the Demis couple had moved to the locus, congratulating them on acquiring the locus.

The judge, after hearing, allowed the motion for summary judgment. Judgment was entered on June 14, 1989, after a finding by the judge that "there is no genuine issue of material fact and that the . . . [transferees] are entitled to judgment as a matter of law." The judgment then declared:

> "1. Any interest which Nanette S. Richman may have had in . . . [the locus] was litigated [and] adjudicated during the trial of her complaint for divorce [the divorce case] . . . judgment on which was entered on March 11, 1988.
>
> "2. The . . . [judge in the divorce case] considered the testimony of Nanette S. Richman and Herbert J. Richman regarding . . . [the locus] and specifically the transfer of that property to Nicholas P. Demis, Jr., in formulating its judgment on the complaint for divorce. That judgment was intended to be dispositive of any interest in . . . [the locus] or its proceeds, which Nanette S. Richman or Herbert J. Richman may have had. Any chose in action which . . . Nanette S. Richman may have had against Herbert J. Richman, or his successors in title, the plaintiffs herein, in connection with the transfer of the . . . [locus] was considered by the judgment entered in the divorce proceeding. Nanette S. Richman had a full and fair opportunity to litigate these issues during the divorce trial. Consideration of the parties' interests in . . . [the locus] was essential to an adjudication of their claims for distribution of the marital estate."

We reverse, because we conclude that the transferees had not sustained their burden of establishing that in this case there remained no genuine issue of material fact.

Before the day (June 14, 1989) when the motion for summary judgment was heard, the wife's attorneys on May 17 and 23, 1989, had given notice of depositions which they desired to take from the husband (Richman), Apostolicas, Bank of New Hampshire, and Demis.[5] There are issues of fact which are now asserted by the wife not shown to have been settled completely by the judgment nisi (or even by the portions of the divorce trial evidence, already mentioned above) which might have some bearing on aspects of the declaratory relief sought by the transferees. For example, those documents from the divorce case in this record do not show whether and to what extent the wife had knowledge of the proposed transfer of the locus to Demis by a deed not signed by her or whether she later ratified the transfer by conduct or otherwise (or, perhaps, had authorized by her general conduct in advance the husband's actions with respect to the deed and other papers).

The decision in *Heacock* v. *Heacock*, 402 Mass. 21 (1988), discussed below, essentially states (at 23-25) that usual principles of claim preclusion and issue preclusion do not apply in the present situation. If the wife's ratification or authorization of the husband's actions at any time could be shown, we think that would be decisive of this case. Also it may be that, once she and her counsel discovered the actions of the husband, the wife may have had some obligation (when seeking a division of marital assets) to assert the claim now made in the divorce proceedings so that the judge would have before him all the considerations bearing upon a property division. Whether that is the case may depend on facts which may be proved at trial. Other relevant issues of fact

[5]Under Mass.R.Civ.P. 56(f), 365 Mass. 824-825 (1974), it would be open to the wife to request a continuance in order to permit affidavits to be supplied or depositions to be taken which would or might show the existence of disputed issues of fact. The stay of proceedings in this case, sought by the wife, in substance amounts to such a request for a continuance.

dealt with in the divorce case may not have been made a part of this record.

*Heacock* v. *Heacock, supra,* was decided March 22, 1988, over a week after the judgment nisi in the divorce case and the judge's memorandum of findings and rulings dated March 4, 1988. The probate judge, when he made his decision in the divorce case, obviously would not have known of the then forthcoming *Heacock* opinion.

The *Heacock* case dealt with a judgment nisi of divorce (which had become final because not appealed by the husband) and which had involved an award to Mrs. Heacock of "alimony . . . and a share of the marital property" (see 402 Mass. at 22). Mrs. Heacock had sought in the Superior Court, prior to the divorce, to recover for serious bodily injuries suffered by her as the result of her husband's acts while they were still married but after "they had been separated for some months." *Ibid.* Mrs. Heacock's complaint was not served on her former husband until about eight months after the judgment nisi of divorce rendered in the Probate Court, although she had presented evidence in the divorce proceedings of Heacock's assault on her and of her injuries. "The Probate Court judge did not make findings indicating what factors he considered in reaching his decisions as to alimony and the division of marital property." Mrs. Heacock "did not disclose the existence of the pending tort claim to the Probate Court." *Ibid.* In the Superior Court, the trial judge dismissed Mrs. Heacock's tort action "on the basis of issue preclusion, collateral estoppel, res judicata, or any one of those three, whichever happens to be the best one." 402 Mass. at 23.

This decision of the trial judge in the *Heacock* case was reversed by the Supreme Judicial Court because the judgment in the divorce case was not conclusive under principles of "claim preclusion" (*id.* at 23-24), as that term is used in the Restatement (Second) of Judgments § 25 (1980), as preventing the splitting of a single cause of action based upon the same claim. The *Heacock* opinion (at 24) said

claim preclusion "applies only where both actions were based on the same claim."[6]

The opinion (at 25-26) then pointed out that arguments made by Heacock (e.g., that his ex-wife had delayed service of the tort claim to his prejudice until it was too late for him to appeal that divorce judgment) were not "properly before" the Supreme Judicial Court on the appeal then decided because the "parties [had] presented little or no relevant evi-

---

[6]The opinion proceeded (some citations omitted):

"A tort action is not based on the same underlying claim as an action for divorce. . . . The purpose of a tort action is to redress a legal wrong in damages; that of a divorce action is to sever the marital relationship between the parties, and, where appropriate, to fix the parties' respective rights and obligations with regard to alimony and support, and to divide the marital estate. Although a judge in awarding alimony and dividing marital property must consider, among other things, the conduct of the parties during the marriage, G. L. c. 208, § 34 (1986 ed.), the purposes for which these awards are made do not include compensating a party in damages for injuries suffered. The purpose of an award of alimony is to provide economic support to a dependent spouse, *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 623 (1986); that of the division of marital property is to recognize and . . . recompense the parties' respective contributions to the marital partnership, *Hay* v. *Cloutier*, 389 Mass. 248, 254 (1983). . . . [Mrs. Heacock] could not have recovered damages for the tort in the divorce action, as the Probate Court does not have jurisdiction to hear tort actions and award damages. G. L. c. 215, §§ 3, 6 (1986 ed.). . . . The policy considerations commonly advanced to justify the doctrine of claim preclusion are not implicated in the circumstances of this case. Maintenance of the tort claim will not subject . . . [Heacock] and the courts to the type of piecemeal litigation that the doctrine of claim preclusion seeks to prevent. As such, nothing in the doctrine or in the policy considerations underlying it warrants its application in the circumstances of this case. . . .

"*Issue preclusion.* To defend successfully on the ground of issue preclusion . . . [Heacock] must establish that the issue of fact sought to be foreclosed actually was litigated and determined in a prior action between the parties or their privies, and that the determination was essential to the decision in the prior action. . . . Because a judge in awarding alimony and dividing marital property must consider a number of factors, G. L. c. 208, § 34, and the judge who presided over the Heacocks' divorce action did not make any findings of fact to support his judgment, we cannot say that the judge necessarily resolved any issue relating to the defendant's assault of the plaintiff. See *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 367 (1985) ('G. L. c. 208, § 34, issues are not "necessarily involved" in a judgment of divorce'). Accordingly, the doctrine of issue preclusion does not apply."

dence" and in the absence of findings, the *Heacock* record was "inadequate to permit a ruling of law."[7]

The *Heacock* case is not decisive of the present case, and in various respects may be distinguishable. The case strongly indicates that neither usual principles of claim preclusion nor of issue preclusion apply on the present record, and may suggest that an independent tort claim (based on any unauthorized signature in behalf of the wife of the 1985 deed of the locus to Demis) is not a marital asset susceptible of allocation and settlement by a division of marital assets under c. 208, § 34. We need not decide whether that is so for, viewing the present record as a whole, the transferees (as already stated) have not sustained adequately their burden of showing that all issues of fact are undisputed. It was error to grant summary judgment. The case must be remanded to the Probate Court for trial on the issues whether the wife authorized or ratified the actions of the husband and whether, unlike the *Heacock* case where no property issues were implicated in Mrs. Heacock's tort claims, some obligation existed for the wife here to assert the present claims more promptly in the divorce case.

This proceeding is brought by the transferees who, of course, were not parties to the divorce case, seeking declaratory relief. The trial now ordered will relate only to the issue whether the wife is now barred from relief by reason of ratification or authorization of the admitted acts of the husband with respect to the locus or by failing to have her present claims adjudicated in the divorce proceeding.

---

[7]The *Heacock* decision (at 23, 24) makes reference to the Restatement (Second) of Judgments and to 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4402 (1981, & the then current 1987 Supp.) as helpful in explaining generally the new nomenclature used in respect of the doctrines by which a judgment in one action has a binding or influential effect in another action. We do not suggest that the Restatement or any text authority provides a precise and decisive answer to any issues argued in the present case by the transferees of the locus and the wife. The discussion, however, in the Restatement's general introduction and in introductory notes to particular chapters may give useful guidance in some issues which may be argued on remand.

Our decision of today in the divorce case requires no revision because the wife's present claim was not raised at all until some months after the judgments nisi, and we have dealt with the divorce case as of the date of those judgments (subject only to a remand of the issues of interim alimony) as stated in our decision of the divorce case. The question is presented to us, however, whether, in further proceedings in this case, the presiding judge may continue to serve. He obviously has great familiarity with the long record in the divorce case (see the decision in that case, *supra*, e.g., at 656, note 3; at 662, note 8, and par. A.1 of the appendix to that decision, at 668). For him to sit would avoid the necessity of another judge assuming the task of familiarizing himself or herself with two long records.

The trial judge unexpectedly was confronted on April 19, 1989, with new issues relevant to some facets of a case which he thought had been disposed of finally in the Probate Court over a year earlier. At that hearing in this case and at the hearing on June 14, 1989, on the motion for summary judgment, he made comments which it would have been wiser for him to have omitted, certainly until he had received, read, and considered our decision of today on the appeal in the divorce case. We think that, if the judge does not wish (for his own reasons) to recuse himself, he has shown (on the record in the divorce case and on the present record) sufficient objectivity and independence to deal with this case judicially and fairly. The motion to require his recusal was properly denied by him.

No questions about whether this case is within the proper scope of declaratory relief at all (G. L. c. 231A, as amended) have been sufficiently argued to us to require us to decide any such questions at this stage. We suggest that, before a trial on remand, it be considered whether the complaint in this case should be amended to join the husband (Richman) as a party for it is likely that the wife's present claim is designed as a step to charge him eventually with any resulting damages. The wife's counsel has indicated that this has

been done in the New Hampshire case, but the docket in this case shows no comparable action.[8]

## Conclusion

The summary judgment is reversed. This case is to stand for trial or other further proceedings, in a manner consistent with this opinion.

*So ordered.*

---

[8]Also, it should be considered whether (in view of some statements in the *Heacock* case, already quoted, *supra*, note 6, first par.), it would be prudent to consider transferring this case to the Superior Court or taking appropriate steps to have the judge authorized to sit in that court as well as in the Probate Court.

It is not mandatory for the trial judge to dismiss this case merely because of the pendency of the prior New Hampshire suit brought by the wife. See Mass.R.Civ.P. 12(b)(9), 365 Mass. 754-755 (1974), which refers only to the "[p]endency of a prior action in a court of the Commonwealth." See Smith & Zobel, Rules Practice § 12.15.1 (1974 ed. at 304-309, & Supp. 1990 at 127-128).